SIMON MUJO and INDRIT MHARREMI, on behalf of themselves and all others similarly situated,

    Plaintiff,

    v.

JANI-KING INTERNATIONAL, INC., JANI-KING INC., and JANI-KING OF HARTFORD, INC.,

    Defendant.

No. 3:16-cv-1990 (VAB)

**RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION**

Simon Mujo and Indrit Muharremi, on behalf of a putative class of over 100 Jani-King franchisees (collectively "Plaintiffs"), have sued Jani-King International, Inc., Jani-King, Inc., and Jani-King of Hartford, Inc. (collectively "Jani-King"). In this diversity action, Mr. Mujo and Mr. Muharremi allege that Jani-King has unlawfully classified them as independent contractors under the Connecticut Wage Law, Conn. Gen. Stat. § 31-58 *et seq.*, and that the various fees, costs, client sales tax, and charge backs under Jani-King's franchise agreement violate Section 31-72 of the Connecticut General Statues.

Plaintiffs now move for reconsideration of the Court's March 31, 2018 Order, granting in part and denying in part Jani-King's motion to dismiss the Amended Complaint.

For the following reasons, the motion is **DENIED**.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### A. FACTUAL ALLEGATIONS

Jani-King provides commercial cleaning services to its customers. Am. Compl. ¶ 15. Jani-King franchisees, two of whom are Mr. Mujo and Mr. Muharremi, conduct these cleaning services. *Id.* To carry out their business, Jani-King, under the terms of a franchise agreement ("Agreement"), allegedly enters into independent contractor relationships with individuals who then perform janitorial work for Jani-King customers. *Id.* Jani-King allegedly required all members of the putative class to sign substantially similar agreements before working for Jani-King. *Id.* ¶ 16.

Under the terms of these agreements, Jani-King allegedly required Plaintiffs to pay an initial and non-refundable franchise fee down payment, a condition predicate for Jani-King providing them with the opportunity to perform cleaning services under Jani-King's cleaning contracts between Jani-King and their customers. *Id.* ¶ 17. Mr. Mujo and Mr. Muharremi and a subset of the putative class members allegedly paid the down payment to Jani-King as a lump sum at the time of entering into the contract. *Id.* A second subset of putative class members allegedly paid a portion of the down payment at the time of entering into the contract and paid the outstanding balance as monthly deductions drawn from the compensation paid to them by Jani-King. *Id.*

Plaintiffs allege that they are not free from Jani-King's control and direction with respect to Plaintiffs performance of services, under the terms of the Agreement. *Id.* ¶ 20. Plaintiffs also maintain that Jani-King's methods, procedures, and policies with which Jani-King requires Plaintiff to comply "are numerous and detailed and control the manner in which Plaintiffs and the putative class members must perform their tasks." *Id.*

Plaintiffs also maintain that Jani-King deducts monthly various sums of money from their wages, including royalty fees, advertising fees, finder's fees, accounting fees, technology fees, complaint fees, services fees, non-reported business fees, client sales tax, lease deductions, and various other fees. *Id.* ¶ 23.

### B. PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on December 5, 2016, and, on February 9, 2017, filed an Amended Complaint, alleging two counts: (1) Jani-King has violated the Minimum Wage Act; and (2) Jani-King has been unjustly enriched. ECF Nos. 1, 41.

On March 31, 2018, the Court dismissed Count One of the Amended Complaint, except to the extent that the various fees and deductions required under the Agreement may violate public policy, as expressed by Section 31-73(b) of the Connecticut General Statutes.

Plaintiffs now move for reconsideration, or, in the alternative, for the Court to certify the question for definitive resolution by the Connecticut Supreme Court. No. 83.

## II. STANDARD OF REVIEW

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted). A motion for reconsideration generally does not allow the moving party to revisit arguments that have already been presented before the court. *See Shrader*, 70

3

F.3d at 257 ("[A] motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided.")

## III. DISCUSSION

### A. Reconsideration

Plaintiffs ask the Court to reconsider whether Plaintiffs could recover certain categories of damages, if Plaintiffs were to prevail on their claim that certain payments constituted wages under Section 31-71(e) of the Connecticut General Statues. The Court declines to do so.

Plaintiffs do not present new evidence and do not argue clear legal error under authority binding on this Court; instead, Plaintiffs argue the Court should adopt the position of the Massachusetts Supreme Judicial Court in *Awuah v. Coverall North America, Inc.*, 952 N.E.2d 890 (Mass. 2011). It is well-settled that a court sitting in diversity must apply the substantive law of the forum state on issues that would bear on the outcome of the issue. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994); *accord* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). Plaintiffs therefore have provided no basis for the Court to reconsider the matter.

B.  **Certification**

Alternatively, Plaintiffs argue that the Court should certify the question to the Connecticut Supreme Court to provide interpretive guidance. The Court disagrees.

Connecticut law provides that "[t]he Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51–199b(d). "[I]f there is controlling authority on point, the question should not be certified." *Yale Univ. v. Konowaloff*, No. 3:09-cv-466 (AWT), 2011 WL 13238541, at *1 (D. Conn. Sept. 30, 2011) (citation omitted).

The Connecticut Supreme Court has addressed the issue of wages under 31-71(e) in *Mytych v. May Department Stores Co.*, 260 Conn. 152 (2002), and, more recently in *Geysen v. Securitas Sec. Services USA, Inc.*, 322 Conn. 385 (2016). Because the Connecticut courts have rendered "controlling appellate decision[s]" that specifically address the question Plaintiffs have put at issue, Plaintiffs have failed to provide a sufficient basis for certification under Conn. Gen. Stat. § 51–199b(d).

IV. **CONCLUSION**

For the reasons discussed above, the motion for reconsideration is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of April, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE