UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SIMON MUJO and INDRIT MUHARREMI,
*on behalf of themselves and all others
similarly situated*,
  *Plaintiffs*,

v.

JANI-KING INTERNATIONAL INC., et al.,
  *Defendants.*

No. 3:16-cv-1990 (VAB)

**RULING AND ORDER ON MOTION FOR RECONSIDERATION**

On December 30, 2019, Simon Mujo and Indrit Muharremi, on behalf of a class of over 100 Jani-King franchisees (collectively "Plaintiffs"), moved for reconsideration of this Court's December 21, 2019 Ruling and Order on a motion for summary judgment filed by Jani-King International, Inc., Jani-King, Inc., and Jani-King of Hartford, Inc. (collectively "Defendants" or "Jani-King"). Pls.' Mot. for Reconsideration, ECF No. 176 (Dec. 30, 2019) ("Pls.' Mot."), Pls.' Mem. in Support of Pls.' Mot., ECF No. 176-1 (Dec. 30, 2019) ("Pls.' Mem."); *see also* Ruling and Order on Mot. for Summ. J., ECF No. 175 (Dec. 21, 2019) ("Ruling and Order").

Under Local Rule 7(c), Plaintiffs ask the Court to reconsider its decision granting summary judgment for Jani-King and dismissing Plaintiffs' unjust enrichment claim. Pls.' Mot. at 1 (citing D. Conn. L. Civ. R. 7(c)).[1]

---

[1] While Plaintiffs filed this motion under Local Rule 7(c), the Court recognizes that Plaintiffs' motion also warrants consideration under Rule 59 of the Federal Rules of Civil Procedure, although there is no difference in the underlying legal standard in reviewing either motion. *See Kelly v. Honeywell Int'l, Inc.*, No. 3:16-cv-00543 (VLB), 2017 WL 6948927, at *2 (D. Conn. May 25, 2017) ("A motion for reconsideration filed under Local Rule 7(c) is equivalent as a practical matter to a motion for amendment of judgment under Fed. R. Civ. P. 59(e)." (citing *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991)). "[E]ach seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford*, 942 F.2d at 133.

For the reasons discussed below, the motion for reconsideration is **DENIED**.

I.   **BACKGROUND**

The Court will assume familiarity with the underlying record of this case and will only discuss matters relevant to resolving this motion.

On June 10, 2019, Jani-King timely moved for summary judgment, and filed a supporting memorandum, a statement of material facts, and twenty other exhibits. *See* Docket Entries, ECF No. 136 (June 10, 2019) (containing the referenced filings).

On August 2, 2019, Plaintiffs timely opposed Jani-King's motion for summary judgment, and filed their supporting memorandum of law, response to Jani-King's statement of material facts, a supporting memorandum, and fourteen exhibits, *see* Docket Entries, ECF Nos. 154-56 (Aug. 2, 2019 (containing the referenced filings). Jani-King timely replied, *see* Defs. Reply in Support of Jani-King Mot., ECF No. 161 (Aug. 16, 2019), and on November 19, 2019, the Court held a hearing on Jani-King's motion for summary judgment, Minute Entry, ECF No. 172 (Nov. 19, 2019).

The parties' filings focused primarily on the employment/independent contractor issue, i.e., whether Plaintiffs were unlawfully misclassified as independent contractors, but there was no discussion of the value of the various fees paid by Plaintiffs under the franchise agreement.

On December 21, 2019, the Court granted Jani-King's motion for summary judgment and dismissing Plaintiffs' remaining unjust enrichment claim. The Court applied Connecticut's ABC test for independent contractor misclassification, Conn. Gen. Stat. § 31-222(a)(1)(B)(ii), and found that a reasonable factfinder could conclude that Jani-King unlawfully misclassified Plaintiffs as independent contractors. Ruling and Order at 17-33.

Plaintiffs, however, did not have a viable claim for relief under unjust enrichment,

because they argued only that the franchise agreement is an employment agreement, so any fees made under the franchise agreement are void as a matter of law. *Id.* at 33-37 ("But in order to have a viable claim, Plaintiffs must do more than show that the franchise agreement is an employment agreement and then conclusorily assert that any fee or payment required by the franchise agreement is void as a matter of law."). The Court had already rejected this argument when it dismissed Plaintiffs' § 31-71c wage claim.

> Based on this record, Plaintiffs' § 31-73(b) claim rests solely on the franchise agreement being an employment agreement in violation of public policy. As they have argued in their opposition, "the franchise fees explicitly require cleaning workers to pay large sums in exchange for cleaning work in violation of public policy." Pls.' Opp. at 38 (citations and footnote omitted). They also argue that "[b]ecause they have to pay so much money upfront to obtain their cleaning work, the franchisees must keep working for Jani-King to earn back the money they have been paid." *Id.* at 39. Additionally, Plaintiffs submit that "[o]ther ongoing fees such as insurance, advertising, accounting, and technology fees, also must be paid as a condition of continued employment, or Jani-King has the right to terminate the franchise." *Id.* (citation omitted). Finally, Plaintiffs argue that Jani-King's practice of deducting "charge-backs" from Plaintiff's gross revenue is also violative of public policy. *See id.* at 39-40 ("A 'charge-back' occurs when a customer fails to pay Jani-King for work already performed by [P]laintiffs.").

*Id.* at 38.

Based on Connecticut law, specifically the Connecticut Franchise Act, Conn. Gen. Stat. §§ 42-133e – 42-133h, the Court found that the fees paid under the franchise agreement could not be *per se* invalid and must have some value. *Id.* at 39. Yet, despite the various filings, Plaintiffs did not identify the value of the franchise agreement itself, nor did they identify the fees that were added beyond that value. *Id.* Instead, Plaintiffs' arguments focused on the independent contractor misclassification issue and rehashed the same argument as before—that all the fees paid were unjust because the franchise agreement was an employment agreement.

3

Accordingly, the Court found that "this record lacks the evidence necessary to create a genuine issue of fact as to their entitlement to relief on their §31-73(b) unjust enrichment claim," and dismissed the claim, thereby granting summary judgment to Jani-King. *Id.* at 40.

Plaintiffs now move for the Court to reconsider its decision. Pls.' Mot. at 1.

## II.  STANDARD OF REVIEW

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Indeed, "[m]otions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions." D. Conn. L. Civ. R. 7(c); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 108 (2d Cir. 2013) ("It is well-settled that a party may move for reconsideration and obtain relief only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018) (citing *Questrom v. Federated Dep't Stores, Inc.*, 192 F.R.D. 128, 130 (S.D.N.Y. 2000)). "A motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'[.]" *Mandell v. Doloff*, No. 3:17-cv-01282-MPS, 2018 WL 3677895, at *1 (D. Conn. Aug. 2, 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as*

4

*amended* (July 13, 2012)); *accord Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

## III. DISCUSSION

This Court found that there was a genuine issue of material fact as to whether Plaintiffs were unlawfully misclassified as independent contractors, Ruling and Order at 17-33, but ultimately held that the record "lacks the evidence necessary to create a genuine issue of fact as to [Plaintiffs'] entitlement to relief on their §[]31-73(b) unjust enrichment claim," *id.* at 40.

Plaintiffs argue that the Court's Ruling and Order "overlooked evidence in the record and was clearly erroneous and, if not reversed, would result in manifest injustice." Pls.' Mot. at 1. More specifically, Plaintiffs argue that:

> [t]he court's decision went beyond the arguments made by Defendants and required Plaintiffs to clear two hurdles that the law simply does not place in front of them: (1) that Plaintiffs must show the initial and continuing fees were deductions from wages, when the plain language of Conn. Gen. Stat. Sec. 71-73(b) is clearly broader than just wages (including "wages, fee, sum of money or contribution"), and (2) that Plaintiffs must do more than simply show that the fees were paid to secure employment – they must show what percentage of the fees related to the job and what percentage related to the franchise.

Pls.' Mem. at 10.

Plaintiffs first argue that "any 'fee, sum of money or contribution' from Plaintiffs is against Connecticut's public policy so long as it was 'necessary to secure employment or continue in employment.'" *Id.* at 4 (citing Conn. Gen. Stat. § 31-73(b)). In support of this argument, Plaintiffs state that they "clearly provided evidence that their franchise fee down payments and continued payments under the contract were 'necessary to secure employment or continue in employment.'" *Id.*; *see also id.* at 5 (referencing deposition testimony indicating that

5

Plaintiffs had to sign and pay the fees under the franchise agreement). Under Plaintiffs' view of the law, "[i]f Plaintiffs show that they were employees [under the ABC test], and that they had to sign the agreement to become employees, then any payments required in the agreement are required to 'secure employment.'" *Id.* at 6.

Plaintiffs also argue that their "claims do not rest solely on the 'already rejected notion that the franchise agreement violates public policy,'" but "rest on the claim that, to the extent that Plaintiffs were at least in part employees . . . , they obtained that status only if they paid 'sums of money' from their pockets (franchise fees) and agreed to further payments that were clearly required parts of the deal." *Id.* at 7.

Finally, Plaintiffs argue that the Court conflated proof of damages with liability. *Id.* at 8. Plaintiffs request 100% of the fees paid if they are found to be employees and not franchisees, and offer a couple methods of calculation for if they are found to be both franchisees and employees, including using Connecticut's minimum wage rate. *Id.* at 9 ("For example, if a Plaintiff worked 40 hours in 2017, when the minimum wage rate was $10.10, his 'job' portion of his status would have been worth at least $404 per week."). Plaintiffs note that at trial, "they can and will provide the court with a record from which it can fashion an equitable remedy," and repeatedly emphasize that the record "amply proves" that "the payments they made were necessary to obtain their franchise/job." *Id.*

The Court disagrees.

At the motion to dismiss stage, Plaintiffs argued that any fees paid under the franchise agreement were unjust because the franchise agreement was an employment agreement, and the Court rejected that argument. *See Mujo v. Jani-King Int'l, Inc.* (*Mujo I*), 307 F. Supp. 3d 38, 49-50 (D. Conn Mar. 31, 2018) ("At oral argument, Plaintiffs nevertheless argued that these

6

deductions, wholly consistent with the parties' franchisor-franchisee agreement, violate § 31-71a(3) because the parties' agreement should be rendered void as a matter of public policy. The Court disagrees.").

At the motion for summary judgment stage, Plaintiffs again advanced the same argument, citing inapplicable and non-binding precedent from Massachusetts in support of their claims. *See* Pls.' Opp. to Def.'s Mot. for Summ. J., ECF No. 154 at 36 (Aug. 2, 2019) ("If the plaintiffs did not in fact purchase a bona fide franchise but instead are found to have purchased the right to work as a janitor for Jani-King . . . , then the franchise fees amount to nothing more than a payment 'to secure and continue in employment.' This finding is consistent with the analysis of the Massachusetts Supreme Judicial Court[.]").

At this stage of the case, following the Court's Ruling and Order and in their motion for reconsideration, Plaintiffs must point to any "controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c); *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Plaintiffs instead simply argue again that "the payments they made were necessary to obtain their franchise/job," Pls.' Mem. at 9, without delineating the value of the franchise agreement, *id.* at 6 ("The Court wrote in its ruling that some portion of the fees must have been for the franchise . . . but by the same logic, some portion must also have been for the job if the fees were necessary to secure that franchisee/employee status."). Plaintiffs fail again to "distinguish[] their claims for relief from legitimate fees within the franchise agreement, which the Court must presume exists, given the applicable caselaw." Ruling and Order at 38 (citing *Mujo I*, 307 F.Supp.3d at 50 ("This Court therefore 'must enforce the contract as drafted by the

parties and may not relieve [Plaintiffs] from anticipated or actual difficulties undertaken pursuant to the contract.'" (quoting *Geysen v. Securitas Sec. Services USA, Inc.*, 322 Conn. 385, 392 (2016))).

Because, as the Court held, "franchise agreements are not *per se* invalid under Connecticut law, . . . and therefore must have some value," Ruling and Order at 39 (citing the Connecticut Franchise Act, Conn. Gen. Stat. §§ 42-133e – 42-133h), the absence of any evidence in the record regarding their value meant that Plaintiffs' legal theory rested solely on whether the franchise agreements had any value, *id.* at 38-39 ("[U]nder the Plaintiffs' view of the law . . . the franchise agreement has no value and any fee paid by them to Jani-King is 'necessary to secure employment or continue in employment' . . . Plaintiffs . . . have failed to identify th[e] value [of the franchise agreement] or conversely, identify the fees that have been added beyond that value."). In other words, rather than the Court conflating liability with damages, Plaintiffs made liability for their unjust enrichment claim wholly contingent on the franchise agreement being nothing more than an employment agreement. *See, e.g.*, Pls.' Mem. at 6 ("Plaintiffs have presented evidence . . . for a factfinder to conclude that Defendants exacted their down payments and continuing fees on the representation that such fees were necessary in order to secure the employment relationship."). As discussed above, Connecticut law, however, does not allow for that narrow approach to the law.

Significantly, if anything, Plaintiffs' motion for reconsideration is a recognition that the record lacks the evidence necessary to sustain the narrower claim provided for under Connecticut law. Indeed, Plaintiffs argue that the Court could take judicial notice of minimum wages and other data in fashioning an equitable remedy, *see* Pls.' Mem. at 9 (offering various methods under which Plaintiffs could "present evidence from which the Court . . . can fashion an

equitable remedy"), none of which are in this record.

In any event, for purposes of this motion, Plaintiffs provide no citation for the proposition that any of these alleged calculations, none of which are present in or supported by this record, could be probative of their claim. Put another way, Plaintiffs have pointed to no "controlling decisions or data that the court overlooked in the initial decision or order" that would lead to a finding of clear error or manifest injustice, *see* D. Conn. L. Civ. R. 7(c), and, at best, are "presenting the case under new theories," *Analytical Surveys, Inc.*, 684 F3d at 52 (internal citations and quotations omitted). *See also Sankar v. City of N.Y.*, No. 07-cv-4726 (RJD)(SMG), 2012 WL 2923236, at *2 (E.D.N.Y. July 18, 2012) (denying reconsideration because the motion was "in substance and form," "an appeal; to wit, defendants argue that the Court simply came out the wrong way on each of plaintiff's claims . . . . [and] present only repetitive arguments on issues that have already been considered fully by the court" (internal citations and quotation marks omitted)).

In short, Plaintiffs' arguments for reconsideration are based on rejected arguments from prior filings, and Plaintiffs fail to discern controlling decisions or data that the Court overlooked.

Accordingly, the Court will not reconsider its earlier Ruling and Order dismissing Plaintiffs' unjust enrichment claim as a matter of law.

## IV. CONCLUSION

For the reasons explained above, the motion for reconsideration is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of January, 2020.

           /s/ Victor A. Bolden
           Victor A. Bolden
           United States District Judge